UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW J. WILLIAMS,

                              Plaintiff,

v.                                                            3:14-CV-0129
                                                           (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                                      OF COUNSEL:

OLINSKY LAW GROUP                              HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                  MICHELLE L. CHRIST, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this Social Security action filed by Matthew J. Williams ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13, 21.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on December 3, 1983. He completed education through the eighth grade. Plaintiff also completed two years of training in heavy equipment operation repair but did not receive a certificate. Plaintiff's employment history consists of jobs as a factory laborer, truck driver, forklift operator, janitor, machine operator and stock worker. Generally, Plaintiff's alleged disability consists of lumbar disc disease, pulmonary embolism and depression. Plaintiff's alleged disability onset date is March 3, 2011 and his date last insured is March 31, 2011.

### B. Procedural History

On December 30, 2011, Plaintiff applied for Social Security Disability Insurance and Supplemental Security Income. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 28, 2013, Plaintiff appeared before the ALJ, Edward I. Pitts. (T. 42-82.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on June 28, 2013. (T. 22-41.) On December 19, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 27-34.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (T. 27.) Second, the ALJ found that Plaintiff's Factor V clotting disorder, degenerative disc disease of the low back and depression with post

2

traumatic stress disorder are severe impairments, but that his history of gallstones, gastroesophageal reflux disease, borderline intellectual functioning and marijuana abuse, in remission, are not severe. (T. 27-28.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 28-30.) The ALJ considered Listings 1.04, 4.00, and 12.04. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[1] except that he needs to avoid occupational hazards due to a risk of falling and should be allowed to use a cane for ambulation on rough or uneven terrain due to balance issues. In addition, the ALJ found that Plaintiff is capable of performing all of the requirements of unskilled work. (T. 30-33.) Fifth, and finally, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 33-34.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because (a) he failed to reconcile his RFC determination with the opinion

---

[1] According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

3

provided by Dr. Ryan, and (b) he improperly discounted the opinion of Plaintiff's treating physician, Dr. Corey. (Dkt. No. 13 at 4-9 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ improperly discounted his credibility. (*Id.* at 9-11.) Third, and finally, Plaintiff argues that the ALJ's finding at step five of the sequential analysis is not supported by substantial evidence. (*Id.* at 11.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues that substantial evidence supports the ALJ's RFC finding. (Dkt. No. 21 at 6-10 [Def.'s Mem. of Law].) Second, and finally, Defendant argues that the ALJ properly determined that there are a significant number of jobs in the national economy that Plaintiff can perform. (*Id.* at 11.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity. If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education,
> and work experience; the [Commissioner] presumes that a claimant who is
> afflicted with a "listed" impairment is unable to perform substantial
> gainful activity. Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform his past
> work. Finally, if the claimant is unable to perform his past work, the
> [Commissioner] then determines whether there is other work which the
> claimant could perform. Under the cases previously discussed, the
> claimant bears the burden of the proof as to the first four steps, while the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.   Whether the ALJ Erred in Weighing the Medical Opinions of Record

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21 at 6-9 [Pl.'s Mem. of Law].) The Court would only add the following analysis.

Plaintiff argues that the ALJ erred in weighing the opinions of his treating physician, Dr. Mark Corey, M.D., and consultative examiner, Dr. Thomas Ryan, Ph.D. Defendant counters that the ALJ's determination is supported by substantial evidence.

The ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 416.927(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the

6

opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

7

Here, the record contains treatment records from Plaintiff's treating family practice physician, Dr. Corey, spanning August 2011 through February 2013. (T. 321-330, 485-514, 555-566.) In an April 23, 2013 letter summarizing his treatment of Plaintiff, Dr. Corey noted that he began treating Plaintiff in March 2011, but that Plaintiff first reported back pain in August 2011, alleging a three-year history at that time. (T. 542.) Dr. Corey's examination notes reflect that the results of Plaintiff's mental and back exams were routinely "normal." (T. 321-330, 485-514, 555-566.) Dr. Corey further noted that he began treating Plaintiff in March 2011 for pulmonary embolism and that Plaintiff remains on Coumadin for that condition "despite improvement in symptoms." (T. 542.) In a January 18, 2011 physical impairment questionnaire, Dr. Corey opined that Plaintiff would need to recline or lie down during an eight-hour workday in excess of the typical fifteen minute breaks and lunch. (T. 395.) Dr. Corey further opined that Plaintiff can sit for twenty minutes at a time, stand or walk for fifteen minutes at a time and sit for a total of six hours and stand or walk for a total of two hours in an eight-hour workday. Also, Dr. Corey reported that according to Plaintiff, he can walk approximately one city block without rest or significant pain. (*Id.*) Dr. Corey opined that Plaintiff can frequently lift and carry up to ten pounds frequently and up to fifty pounds occasionally, would be absent three or four times per month, and is not capable of working an eight-hour day, five days per week on a sustained basis. (T. 396.) Finally, without providing the requested explanation, Dr. Corey opined that Plaintiff's physical limitations and emotional impairments are reasonably consistent with the symptoms and functional limitations described in the questionnaire. (*Id.*)

Also in the record is the March 2012 examination report of consultative examiner, Dr. Marilee Mescon, M.D. (T. 400-403.) In her report, Dr. Mescon notes that Plaintiff's gait was normal, he could walk on heels and toes without difficulty, he had a full squat, needed no help

8

changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (T. 401.) Dr. Mescon further notes that Plaintiff had full range of motion of his cervical spine, upper and lower extremities and thoracic and lumbar spines, full strength in upper and lower extremities, and no tenderness in his thoracic and lumbar spine areas but that he had diminished sensory perception on the left lateral lower extremity. (T. 402.) Dr. Mescon opined that Plaintiff has no limitations to the ability to sit or stand, but his capacity to climb heights, push, pull, or carry heavy objects may be moderately limited because of recurrent pulmonary emboli where upon if Plaintiff fell he could die because of excess bleeding secondary to Coumadin. (*Id*.)

Further, the record contains treatment notes by Dr. Muhammed Jalaluddin, M.D. regarding three examinations of Plaintiff between September and October 2012. (T. 490-514.) Dr. Jalaluddin noted Plaintiff's complaints of numbness in his left lower limb associated with lower back pain that radiates to his left lateral thigh. (T. 514.) Dr. Jalaluddin referred to a September 2011 MRI of Plaintiff's lumbar spine. (T. 498, 343-344.) That MRI revealed "[l]eft paracentral to lateral disc protrusion at L5-S1, with mass effect on the traversing left S1 nerve root. The protrusion extends laterally to cause moderate left neuroforaminal narrowing and at least moderate right neuroforaminal stenosis." (T. 343.) On September 13, 2012, Dr. Jalaluddin examined Plaintiff, noting full strength of his upper and lower extremities and straight leg raising to 80 degrees on the right and 65 degrees on the left. (T. 498.) At that exam, Dr. Jalaluddin recommended Plaintiff undergo a nerve conduction study because his symptoms of pain in the upper leg and numbness of the whole left lower leg do not correlate with left L5-S1 disc protrusion. (*Id*.) Plaintiff underwent a nerve conduction study on September 27, 2012, the

results of which were normal. (T. 433-434, 514.) On October 16, 2012, Dr. Jalaluddin examined Plaintiff, again with similar results to the prior month's exam, and noted Plaintiff's wish to continue with conservative treatment. (T. 490-491.)

Plaintiff was examined by consultative examiner, Dr. Ryan, on March 15, 2012. (T. 404-407.) Dr. Ryan opined that Plaintiff can follow and understand simple directions, perform simple tasks, generally maintain attention and concentration, and maintain a regular schedule. (T. 406.) Dr. Ryan further opined that Plaintiff appears to have moderate limitation in the ability to learn new tasks and perform complex tasks and that Plaintiff may have moderate limitation in the ability to make appropriate decisions at times. (*Id.*) Finally, Dr. Ryan opined that Plaintiff can generally relate with others but may have some moderate limitation in the ability to deal with stress. (*Id.*)

On January 27, 2012, Plaintiff's therapist, Licensed Clinical Social Worker, Steven N. Paro, completed a Mental Capacity Assessment, wherein he opined that Plaintiff had marked or extreme limitation in fifteen out of twenty areas of functioning, including the ability to maintain activities within a schedule, complete a normal workday or work week without interruption from psychologically-based symptoms, interact with the general public, and respond appropriately to changes in the work setting. (T. 397-399.) According to Mr. Paro, none of Plaintiff's treatment records are available because they were destroyed in a flood in September 2011, indicating that he had not treated Plaintiff since prior to that date.

On March 19, 2012, State Agency psychologist, Edward Kamin, reviewed the record to date and found that Plaintiff was either not significantly limited or only moderately limited in ten areas of function. (T. 92-93.) Specifically, Dr. Kamin noted that Plaintiff is only moderately

limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and the ability to sustain an ordinary workday without special supervision. (T. 93.) Further, Dr. Kamin noted that Plaintiff does not have limitations in social interaction. (*Id.*) Ultimately, Dr. Kamin opined that Plaintiff is able to understand and remember simple instructions, maintain adequate concentration and persistence, interact adequately with others and adapt to changes in his work environment. (*Id.*) Dr. Kamin concluded that Plaintiff retains the mental RFC for unskilled work activity.

The ALJ assigned great weight to the opinions of consultative examiners, Dr. Mescon and Dr. Ryan, and to State Agency psychologist, Dr. Kamin. (T. 31.) The ALJ assigned some weight to the opinion of Plaintiff's treating physician, Dr. Corey, to the extent he opined that Plaintiff can lift and carry at the light exertion level or greater, but noted that there is no clinical basis for the remainder of his opinions and therefore, he declines to give it more weight. (T. 32-33.) Further, the ALJ assigned little weight to the opinion of Mr. Paro, noting that his opinion of extreme limitations is significantly inconsistent with that of the consultative examining psychologist, he had not treated Plaintiff in more than a year, he is not an acceptable medical source, and his opinions are inconsistent with Plaintiff's activities of daily living. (T. 33.)

Plaintiff argues that the ALJ erred in failing to incorporate all of Dr. Ryan's opinions into his RFC determination. Specifically, Plaintiff argues that Dr. Ryan's finding that Plaintiff may have some moderate limitation in his ability to deal with stress is important because it ultimately results in the inability to perform a full range of unskilled work, warranting further explanation from the ALJ regarding Plaintiff's RFC for understanding, carrying out and remembering simple instructions and dealing with changes in a routine work setting. Plaintiff

11

relies on Social Security Ruling 85-15 for support. SSR 85-15 instructs that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment" noting that such demands are "highly individualized." SSR 85-15, 1985 WL 56857 at *6 (1985). Here, while Dr. Ryan finds that Plaintiff "may have some moderate limitation in [the] ability to deal with stress" he also opined that Plaintiff can follow and understand simple directions, maintain a regular schedule and generally relate to others. Likewise, Dr. Kamin, who ultimately concluded that Plaintiff retains the mental RFC for unskilled work activity, found that Plaintiff has only moderate limitation to performing activities within a schedule and maintaining regular attendance, is not significantly limited in the ability to make simple work-related decisions, and has no limitations in social interaction. Consequently, the ALJ did not err in assigning great weight to Dr. Ryan's opinions. Moreover, the ALJ incorporated the findings of Dr. Ryan and Dr. Kamin into his mental RFC determination, which was, therefore, supported by substantial evidence.

Plaintiff also argues that the ALJ improperly discounted the opinion of Dr. Corey. Specifically, Plaintiff points out that the ALJ erroneously substituted his own lay opinion for that of Dr. Corey when he assigned less than controlling weight based on Dr. Corey's failure to explain how Plaintiff's back impairment and pulmonary emboli are connected to the need to recline and take multiple absences, noting that Dr. Corey only examined Plaintiff on a small number of occasions. Plaintiff argues that instead of assigning less weight to Dr. Corey's opinion on this basis, he should have instead re-contacted Dr. Corey for further clarification of his opinions. Plaintiff also argues that the ALJ erred in assigning less than controlling weight to Dr. Corey's opinion because it is supported by the September 2011 MRI results.

To be sure, the ALJ erred in assigning less weight to Dr. Corey's opinion regarding Plaintiff's need to recline or be absent multiple times per month based on the lack of an explanation for that opinion and the "small number of occasions" when Dr. Corey examined Plaintiff because there is no requirement that the medical source explain the basis for his opinion and because, in fact, Dr. Corey examined Plaintiff's back on at least five occasions within an 18-month time frame. However, any error on the ALJ's part is harmless because Dr. Corey's opined limitations are not supported by his own treatment notes or other substantial evidence in the record. *See Duvergel v. Apfel*, No. 99-CV-4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar. 29, 2002); *Walzer v. Chater*, 93-CV-6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept. 26, 1995) (finding that ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); *see also Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir.1996) (holding that harmless error rule applies to review of denial of disability benefits). Here, the record reveals that four of the five times Dr. Corey examined Plaintiff's back, he reported "normal" findings. (T. 328-330, 323-325, 556-558, 559-563.) On the fifth examination, which occurred one week after Plaintiff sustained a fall, Dr. Corey noted that Plaintiff had some tenderness in his lower lumbar spine, pain on range of motion of his hips, but full strength. (T. 563-566.) Moreover, while MRIs of Plaintiff's lumbar spine have revealed disc protrusion at L5-S1 with moderate left neuroforaminal narrowing and moderate right neuroforaminal stenosis, Dr. Jalaluddin opined that those findings are not consistent with Plaintiff's symptoms and ordered a nerve conduction test, which was normal. (T.343-344, 498, 514.) In addition, Dr. Corey's opinions of extreme limitation are not supported by the opinion of consultative examiner, Dr. Mescon, that Plaintiff has no limitations to sit or stand, but that his

13

capacity to climb heights, push, pull, or carry heavy objects may be moderately limited due to recurrent pulmonary emboli. (T. 402.)

To the extent Plaintiff argues that further development of the record was necessary to seek clarification of Dr. Corey's opinions, he is mistaken. To be sure, the ALJ has an affirmative duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("[I]t is the well-established rule in our circuit that the social security ALJ... must on behalf of all claimants ... affirmatively develop the record...." (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir.2009)) (internal quotation mark omitted)). By statute, an ALJ is duty bound to develop a claimant's complete medical history for at least twelve months prior to the filing of an application for benefits, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir.1998) (citing 42 U.S.C. § 423(d)(5)(B) *as incorporated by* 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)). This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding." *Id.* (quoting *Lamay*, 562 F.3d at 509). Re-contacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. *See* 20 C.F.R. § 404.1512(e). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1512(e)(1); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir.1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998).

Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician, including an assessment of the claimant's functional capacity, in order to afford the claimant a full and fair hearing. *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1512(e); *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002) (collecting cases); *Hardhardt v. Astrue*, No. 05–CV–2229, 2008 WL 2244995, at *9 (E.D.N.Y. May 29, 2008)). However, the ALJ has no duty to re-contact a source where the evidence submitted by that source is complete. Where the source's opinion includes all of the factors set forth in 20 C.F.R. §§ 404.1513 and 416.913[2] and there is no indication that further contact will result in additional information, re-contact is not necessary. *See Hluska v. Astrue*, No. 06-CV-0485, 2009 WL 799967, at *17 (N.D.N.Y. Mar. 25, 2009).

Here, Dr. Corey's opinion and treatments noted include all of the factors set forth in the regulations. Under these circumstances, the ALJ was not required to re-contact Dr. Corey for clarification.

Consequently, the ALJ did not err in failing to assign controlling weight to Dr. Corey's opinions. Moreover, the ALJ's physical RFC determination, that Plaintiff can perform light work except that he needs to avoid occupational hazards due to a risk of falling, is supported by substantial evidence.

For these reasons, the ALJ did not err in weighing the medical opinions of record.

---

[2] Pursuant to 20 C.F.R. §§ 404.1513(b) and 416.913(b), medical reports should include a patient's (1) medical history, (2) clinical findings, (3) laboratory findings, (4) diagnosis, (5) treatment prescribed with response and prognosis, and a (6) statement about what the patient can still do despite his or her impairments based on the findings set forth in factors (1) through (5).

**B.      Whether the ALJ Erred in Failing to Properly Assess Plaintiff's Credibility**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 21 at 9-10 [Pl.'s Mem. of Law].)  The Court would only add the following analysis.

A Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992).  However, the ALJ  "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record."  *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012).  "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work.  Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any

> medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ considered Plaintiff's allegations regarding his impairments and functional limitations during the application process and his hearing and found that his medically determinable impairments could reasonably be expected to cause some of his alleged symptoms but that his statements regarding the intensity, persistence and limiting effects of his symptoms are not entirely credible. (T. 32.) Specifically, the ALJ cited Plaintiff's allegations that he can only sit for fifteen to twenty minutes at a time and that he needs to lie down after forty minutes. In addition, the ALJ noted that "[a]fter being prodded with a leading question, [Plaintiff] stated that he has difficulty with concentration due to pain and his need to constantly move around." (*Id.*)

In finding that Plaintiff's allegations are not entirely credible, the ALJ found that Plaintiff's allegations and sworn testimony are not supported by the objective medical evidence, including the imaging studies, EEG and nerve conduction tests, and the opinion of consultative examiner, Dr. Mescon. In addition, the ALJ found that Plaintiff's lack of psychological treatment over the past year, his history of no psychiatric hospitalizations and the fact that he is not taking medications for his mental impairments do not support his allegations of symptoms and limitations related to his mental impairment. (T. 32.) Finally, the ALJ notes that Plaintiff's work history and his testimony that he applied for and received his recovery driver's license because he felt he would be capable of performing the duties required to use that license, do not enhance his credibility. (*Id.*)

Plaintiff argues that the ALJ erred in finding him less than credible based on the ALJ's finding that (1) Plaintiff's allegation of difficulty with concentration was brought forward with a leading question, (2) Plaintiff's pursuit of his recovery driver's license indicates that Plaintiff felt he would be capable of performing the required duties, which would be in the light to medium range of exertion, and (3) Plaintiff's allegation of limitations is not substantiated by any evidence in the record. Defendant counters that the ALJ appropriately exercised his discretion to evaluate Plaintiff's credibility in light of the evidence in the record.

To be sure, Plaintiff is correct that the Federal Rules of Evidence are not directly applicable to an administrative proceeding. *See Sinatra v. Heckler*, 566 F. Supp. 1354, 1359 (E.D.N.Y. 1983). Plaintiff also correctly points out that the ALJ failed to note Plaintiff's testimony that at the time he pursued his recovery license, he thought he could return to that kind of work but quickly realized he was unable. However, the ALJ was allowed to consider Plaintiff's testimony that he pursued the license in 2012, at which time he thought he could perform that kind of work. Nonetheless, even assuming Plaintiff's first and second arguments have merit, the ALJ's credibility assessment was not erroneous because, for the reasons discussed in Point IV.A. of this Decision and Order, the medical evidence does not support Plaintiff's assertions of symptoms and limitations.

For these reasons, the ALJ's credibility determination is supported by substantial evidence.

C. **Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert**

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 21, at 11 [Def.'s Mem. of Law]). The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform. Instead, the ALJ decided, relying solely on the Medical-Vocational guidelines, that there are jobs in the national economy that Plaintiff can perform. Plaintiff argues that the ALJ erred in failing to obtain the opinion of a vocational expert because, due to Plaintiff's non-exertional limitations, reliance on the Grids was inappropriate. Moreover, Plaintiff argues, because the ALJ relied on an erroneous RFC analysis and assessment of Plaintiff's credibility in deciding that there are jobs in the national economy that Plaintiff can perform, his decision at step five of the sequential analysis is likewise erroneous. Defendant counters that the ALJ's decision at step five was based on substantial evidence, and that reliance on the Grids is proper even where non-exertional limitations exist.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant non-exertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606).

However, "the mere existence of a non-exertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410–411 (2d Cir.2010) (citing *Bapp*, 802 F.2d at 603). Where, as here, an ALJ determines that a Plaintiff's mental condition does not limit his ability to perform unskilled work, reliance on the Grids without benefit of a vocational expert is permissible. *See id.*, at 411. Accordingly, Plaintiff's argument that remand is required on this basis is without merit.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**

Dated: March 26, 2015
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge